IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| CORBY ALLBRIGHT, | § | |
| --- | --- | --- |
| Plaintiff, | § § § | |
| v. | § § | 1:17-CV-063-RP |
| WESTERN CONCRETE PUMPING, INC., CHUCK REED, an individual, and BRETT REID, an individual, | § § § § § | |
| Defendants. | § § | |

## ORDER

Plaintiff Corby Allbright initially filed this lawsuit in the 261st District Court, Travis County, Texas, on December 2, 2016. In his original petition, he states that he was hired by Defendant Western Concrete Pumping, Inc. ("Western") in or around April 2012, as a General Manager of the Texas Division of its concrete pumping business. Defendant Reed ("Reed") and Defendant Reid ("Reid") are the chief executive and chief financial officers, respectively, of Western. Plaintiff was eventually promoted to Regional Vice President, but then allegedly forced to resign on August 20, 2015, due to Defendants' unlawful pay practices and slanderous comments. He now brings against Defendants state law claims for breach of contract, quantum meruit/unjust enrichment, promissory estoppel/detrimental reliance, fraud, and slander.

On January 30, 2017, Defendants removed the case to federal court. Defendants do not dispute that Plaintiff has not asserted a federal cause of action. They also do not dispute Plaintiff's allegations regarding the parties' citizenship, including that both Plaintiff and Defendant Brett Reid are citizens of Texas. While this would ordinarily destroy complete diversity and preclude removal to federal court, *see* 28 U.S.C. §§ 1332, 1441, Defendants argued that removal was appropriate because Defendant Reid had been improperly joined in order to defeat diversity jurisdiction. Plaintiff

1

disagrees, and filed a motion to remand (Dkt. 11) on February 27, 2017. Defendants responded, Plaintiff replied, and the motion is now ripe for adjudication.

## I. LEGAL STANDARD

The federal removal statute allows for removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. 1441(a). "To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc); 28 U.S.C. § 1441(a). One of these prerequisites is complete diversity, which "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citation omitted). However, "[t]he improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). Under the doctrine, a federal court must disregard the non-diverse citizenship of any improperly joined defendant, *Smallwood*, 385 F.3d at 572–73, and "that party *must* be dismissed without prejudice." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016). If no party has been improperly joined and complete diversity is lacking, the court lacks subject matter jurisdiction and must remand the case. *See* 28 U.S.C. 1447(c).

The Fifth Circuit "ha[s] recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood*, 385 F.3d at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Defendants do not assert that Plaintiff has committed "actual fraud" in the pleading of Reid's citizenship, so only the latter approach is implicated in this case. *See id.*

Under that approach, "[t]he test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against a [nondiverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a nondiverse] defendant." *Id.* In making this determination, "[a] district court should ordinarily resolve [an] improper joinder by conducting a Rule 12(b)(6)-type analysis." *McDonal*, 408 F.3d at 183 n.6. "However, in cases where the plaintiff has stated a claim, but 'misstated or omitted discrete facts,' the district court has the discretion to pierce the pleadings and conduct a summary inquiry." *Id.* (quoting *Smallwood,* 385 F.3d at 573). This summary inquiry should be limited to identifying "the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [nondiverse] defendant." *Smallwood*, 385 F.3d at 573–74.

The Fifth Circuit has recently clarified that the "Rule 12(b)(6)-type analysis" described above requires the application of federal pleading standards, not state pleading standards. *See Int'l Energy*, 818 F.3d at 200–08; *id.* at 203 ("[T]he federal pleading standard *is* the Rule 12(b)(6)-type analysis." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))). Accordingly, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

This assessment must be performed "on the basis of claims in the state court complaint as it exists at the time of removal." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). As a result, "[p]ost-removal filings may not be considered . . . where or to the extent that they

3

present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999). The court may, however, look to post-removal filings and evidence when they "clarify or amplify the claims actually alleged" in the state court complaint. *Id.*

Lastly, the removing party bears the burden of proof in establishing improper joinder. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). "In deciding whether a party was improperly joined, [a court should] resolve all contested factual issues and ambiguities of state law in favor of the plaintiff," and "any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281–82. "[T]he existence of even a single valid cause of action against the [nondiverse] defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004). A district court's determination that a case should be remanded pursuant to 28 U.S.C. 1447(c) for lack of subject matter jurisdiction is unreviewable even by the issuing court. *See* 28 U.S.C. 1447(d); *Certain Underwriters at Lloyd's, London & Other Insurers Subscribing to Reinsurance Agreements F96/2922/00 & No. F97/2992/00 v. Warrantech Corp.*, 461 F.3d 568, 572 (5th Cir. 2006) ("[28 U.S.C.] 1447(d) gives an 'unmistakable command' so as to preclude review of remands for grounds stated in § 1447(c) 'by appeal, mandamus, or otherwise.'" (citation omitted)); *Browning v. Navarro*, 743 F.2d 1069, 1078 (5th Cir. 1984) ("Even a federal court, persuaded that it has issued an erroneous remand order, cannot vacate the order once . . . it mails a certified copy of the order to the clerk of the state court.").

## II. DISCUSSION

Whether the court has jurisdiction to decide this case depends on whether Defendant Reid was improperly joined. Before assessing the sufficiency of Plaintiff's pleadings with regard to Defendant Reid, the court must address a preliminary issue regarding what materials it may consult.

4

*1. The Operative Pleading*

Plaintiff filed his First Amended Complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), on February 21, 2017, concurrently with his Motion to Remand. (*See* Dkts. 11, 12). The FAC was thus filed as a matter of course. It does not allege any new causes of action or claims against any Defendants and is, of course, not the original state court petition.

Both parties have cited and referred exclusively to the FAC in their briefing regarding whether Plaintiff's allegations pass muster under the 12(b)(6)-type improper joinder analysis. Plaintiff states that the original petition and the FAC differ only insofar as the latter includes "modest[] change[s] for clarification and precision." (Pl. Mot. to Rem., Dkt. 11, at 1). While Defendants note in a footnote that the court cannot consult the FAC in assessing jurisdiction because "[j]urisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction," (Def. Resp., Dkt. 14, at 2 n.1 (quoting *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 592 (5th Cir. 2015)), they immediately thereafter state that they will "take quotes from [the FAC] to demonstrate that Reid was improperly joined" because the FAC "is intended merely as clarifying language." (*Id.*). Defendants' briefing otherwise primarily focuses on the allegations in the FAC. *See, e.g.*, (*Id.* at 4 ("[Plaintiff's] First Amended Complaint fails to meet the federal pleading standard . . . .")).

Both parties therefore seem to view any additional language contained in the FAC as merely clarifying the bases for already alleged claims and theories stated in the original state petition. Because this appears to be an acceptable use of post-removal filings, the court will consider the FAC in rendering its determination. *See Griggs*, 181 F.3d at 700 (explaining that courts may consider post-removal filings that "clarify or amplify the claims actually alleged" in the state complaint, but not those which "present new causes of action or theories not raised" in the state complaint); *see also Akerblom v. Ezra Holdings Ltd.*, 509 F. App'x 340, 346 (5th Cir. 2013), *abrogated on other grounds by Int'l*

*Energy*, 818 F.3d 193 (noting same and assuming arguendo that the facts contained in plaintiff's post-removal, first amended complaint attributing certain statements to defendant could be assessed as clarifying state-court petition); *Apex Golf Props., Inc. v. Allstate Ins. Co.*, 2013 WL 5724523, at *1 (S.D. Tex. Oct. 21, 2013) (considering the first amended state complaint the "operative pleading" but referencing the second amended federal complaint in "interpreting the causes of action or theories alleged in the first amended complaint"); *Hinton v. Union Nat. Life Ins. Co.*, 2007 WL 2059996, at *1–2 (N.D. Miss. July 12, 2007) (allowing post-removal amendment to clarify the allegations against a defendant when it was otherwise "a close call" as to whether original state complaint stated a claim); *cf. Mills Grp. Ltd. v. Oceanografia, S.A. de C.V.*, No. CIV.A. H-08-3449, 2009 WL 3756931, at *2 (S.D. Tex. Nov. 6, 2009) (finding that when the live pleading before the court sets forth allegations sufficient to avoid an improper joinder argument with regard to a nondiverse defendant which was named in the state petition but against which there was previously no stated claim, the court must remand); *LC Farms, Inc. v. McGuffee*, 2012 WL 5879433, at *2–6 (N.D. Miss. Nov. 21, 2012) (ordering remand based on the post-removal amended complaint, where amendment was as a matter of course pursuant to Rule 15(a) and it "rehabilitated a previously deficient claim against a party present in the state court complaint").

## 2. Sufficiency of the FAC

The court now turns to consider whether Defendants have met their burden to show that Plaintiff has failed to state a claim against Reid. The court first recounts Plaintiff's factual allegations and then assesses their sufficiency.

*a. Factual Allegations*[1]

Plaintiff asserts that Reed and Reid are both owners, directors and/or shareholders of Western, which is a corporation. (FAC, Dkt. 12, ¶¶ 5, 10, 14). Reed is the president of Western, and Reid is its chief financial officer and is or at least was the principal in charge of Western's Austin location. (*Id.*, ¶¶ 10, 14, 15). Around April 2012, Plaintiff was hired by Defendant Reid to be a General Manager of Western Concrete's Texas Division, earning approximately $100,000 per year. (*Id.*, ¶ 24). Plaintiff was responsible for running a variety of day-to-day operations "for defendant Western, its owners Reed and Reid, and his immediate supervisor at the Austin location—Reid." (*Id.*, ¶ 24). Later, around October 2013, Plaintiff was promoted to Regional Vice President of Western's Texas operations, but his benefits and job duties remained largely the same. (*Id.*, ¶ 26). Plaintiff and Reid did, however, negotiate a new compensation package, including a salary of $125,000 and the payment of both deferred and non-deferred bonuses on a quarterly basis. (*Id.*, ¶¶ 28–31). Reid told Plaintiff that Western would compensate Plaintiff with 10% of the total net profits, half deferred, as well as 1% of the total gross profits Western earned each quarter. (*Id.*, ¶ 32). Reid also provided Plaintiff with a spreadsheet memorializing this bonus-compensation schedule. (*Id.*, ¶ 33). Thereafter, "[i]n addition to his annual salary, Plaintiff received both non-deferred and deferred bonuses in accordance with defendant Western's bonus structure." (*Id.*, ¶ 30). Despite this partial performance, Plaintiff alleges that Defendants still owe him an amount exceeding $40,000 on his non-deferred bonus account, as well as an amount exceeding $200,000 on his deferred bonus accounts for the time between April 2012 and August 2015. (*Id.*, ¶ 35). Nothing in Reid's representations or in the spreadsheet memorializing the bonus schedule suggested that Plaintiff's deferred bonuses were subject to any sort of "vesting period." (*Id.*, ¶ 36). Despite Plaintiff's

---

[1] The court limits itself to the factual allegations relevant to the alleged breach of contract because, as explained *infra*, it finds that Plaintiff has stated a claim against Reid for breach of contract. Because Reid was not improperly joined for purposes of at least one claim, the entire case must be remanded and the court need not address any of the other claims at issue in this case. *See Gray*, 390 F.3d at 412.

performance of all his obligations in connection with his employment, Defendants have so far refused to pay Plaintiff the amounts listed above. (*Id.*, ¶¶ 37–40).

Plaintiff at certain points states that the promises Reid conveyed in connection with the formation of the alleged contract were on behalf of Western. (*See* FAC, Dkt. 12, ¶ 28, 29, 32 (during compensation negotiations, Reid told Plaintiff "that defendant Western would compensate Plaintiff," and "pay Plaintiff all money earned")). At other times, Plaintiff alleges that the promises were not only on behalf of Western but also on behalf of or personally made by Reid. (*See* FAC, Dkt. 12, ¶¶ 34, 38, 39, 51, 61, 63 (stating that Reid generated the compensation spreadsheet "on behalf of himself and defendants Western and Reed" that Defendants have refused to pay Plaintiff the bonuses "which defendant Reid had promised him," that Defendants "broke Reid's promise," that "Defendant Reid promised [Plaintiff] that he and other defendants would pay [Plaintiff]," and that "[i]njustice can be avoided only be enforcing defendant Reid's promise to pay [Plaintiff]")).

*b. Analysis*

First, Plaintiff has clearly alleged that Reid initially hired him, was his direct supervisor, negotiated his compensation package upon promotion, is the chief financial officer of Western, is/was the principal in charge of Western's Austin location, and is an agent of Western. (FAC, Dkt. 12, ¶¶ 14, 15, 42, 65). Plaintiff has therefore sufficiently pleaded the existence of a contract with Western, facilitated by Reid as Western's agent. *See Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir.) (under Texas law, "[t]he elements of a claim for breach of contract are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." (quoting *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.)); *Hartford Cas. Ins. Co. v. Walker County Agency, Inc.*, 808 S.W.2d 681, 687 (Tex. App.—Corpus Christi 1991, no writ) ("The authority [of an agent] is presumed to be co-extensive with the business entrusted to his care and includes

such contracts and acts as are incident to the management of the particular business with which he is entrusted."). Defendants do not dispute this. (*See* Def. Resp., Dkt. 14, at 2 ("As an agent of Western Concrete, Reid physically made any statements alleged to have come from Western Concrete . . . but those statements all refer to promises made by Western Concrete, not Reid."); *id.*, at 5 ("The Defendants do not dispute that an oral compensation contract existed between Western and [Plaintiff], although the Defendants deny that Western breached any of its obligations under that contract.")).

Second, the court disagrees with Defendants' argument that Plaintiff "has no reasonable possibility of success on his breach of contract claim against Reid because he does not allege that Reid promised to do anything for [Plaintiff]." (Def. Resp., Dkt. 14, at 3). As identified above, the FAC contains allegations that Reid made promises, on his own behalf or individually, to Plaintiff. These allegations, in conjunction with the law of agency in Texas and the liberal federal pleading standards, lead the court to conclude that Plaintiff has stated a claim against Reid. The court explains its reasoning below.

Under Texas law, "where an agent acts on behalf of a disclosed principal . . . within the scope of the authority conferred on him, [the agent] will not ordinarily be personally liable to the other party to the contract." *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 745–46 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citations omitted). But "parties to a contract may alter this general rule so that the agent will be liable on the contract." *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners*, 334 F.3d 423, 428 (5th Cir. 2003) (collecting cases). "An agent may be personally liable on contracts made for the benefit of the principal, where the agent (1) substitutes his or her own responsibility for that of the principal, or (2) has pledged the agent's own responsibility in addition to that of the principal." 3 Tex. Jur. 3d *Agency* § 216 (3d ed., Supp. 2017) (collecting cases). "This liability can be by express agreement, or in the absence of an express

agreement, by circumstances showing that [the agent] has either expressly or impliedly assumed such liability." *Mediacomp, Inc. v. Capital Cities Commc'n, Inc.*, 698 S.W.2d 207, 211 (Tex. App.—Houston [1st Dist.] 1985, no writ) (citing *Ford Motor Co., Edsel Div. v. Boatman*, 345 S.W.2d 782 (Tex. App.—Beaumont 1961, no writ)).

Further, in determining whether the above aspects of agent-third party liability have been sufficiently pled, the 12(b)(6)-type analysis requires the court "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance*, 566 F.3d at 501. The court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "The inquiry focuses on the entirety of the complaint, regardless of how much of it is discussed in the [parties' briefings]." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). Overlapping this is the standard for assessing allegations of improper joinder, under which the court must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff," with "any doubt about the propriety of removal . . . resolved in favor of remand." *Gasch,* 491 F.3d at 281–82. The court is not determining "whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[ing] only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

To reiterate, Plaintiff alleges that Reid, as an agent of Western, generated the compensation spreadsheet "on behalf of himself and defendants Western and Reed," that Defendants have refused to pay Plaintiff the bonuses "which defendant Reid had promised him," that Defendants "broke Reid's promise," that "Defendant Reid promised [Plaintiff] that he and other defendants would pay [Plaintiff]," and that "[i]njustice can be avoided only be enforcing defendant Reid's promise to pay [Plaintiff]." (FAC, Dkt. 12, ¶¶ 34, 38, 39, 51, 61, 63). The court finds it reasonably inferable from these allegations that Reid, as agent of Western, made the promises at issue in such a way that he

"pledged his own responsibility in addition to that of his principal . . . by circumstances, showing that he . . . either expressly or impliedly assumed such liability." *See Mediacomp, Inc.*, 698 S.W.2d at 211 (citation omitted); *see also Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners*, 334 F.3d 423, 428 (5th Cir. 2003) ("The mere fact that an agency relationship exists does not preclude the imposition of personal liability on an express contract with a third party, even though the contract is primarily for the benefit of the principal." (citations omitted)). Plaintiff has therefore stated a breach of contract claim against Reid, requiring remand of the entire case to state court. *See Gray ex rel. Rudd*, 390 at 412 (5th Cir. 2004).[2]

### III. CONCLUSION

For the reasons set out above, the court finds that it lacks subject matter jurisdiction. Accordingly, the court **GRANTS** Plaintiff's Motion to Remand (Dkt. 11) and **ORDERS** that this case be **REMANDED** to the 261st District Court, Travis County, Texas, pursuant to 28 U.S.C. 1447(c).

**SIGNED** on April 12, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff also argues that "Defendants may even take the position that Mr. Reid's actions in promising bonuses to [Plaintiff] [were] ultra vires or otherwise beyond Reid's authority, in which case Mr. Reid may ultimately prove the only defendant who could be liable to [Plaintiff] for the promises made to him by Mr. Reid." (Pl. Mot. to Rem., Dkt. 11, at 9–10). The court need not address that argument.